UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE STATE STREET BANK AND TRUST CO. FIXED INCOME FUNDS INVESTMENT LITIGATION | MDL No. 1945 |
| MEMORIAL HERMANN HEALTHCARE SYSTEM and THE HEALTH PROFESSIONALS INSURANCE COMPANY, LTD., <br><br>　　　　　Plaintiffs, <br>　　-against- <br><br> STATE STREET BANK & TRUST COMPANY, <br><br>　　　　　Defendant. | 08 Civ. 5440 (RJH) |
| HOUSTON POLICE OFFICERS' PENSION SYSTEM, <br><br>　　　　　Plaintiff, <br>　　-against- <br><br> STATE STREET BANK & TRUST CO. and STATE STREET GLOBAL ADVISORS, INC., <br><br>　　　　　Defendants. | 08 Civ. 5442 (RJH) <br><br> **MEMORANDUM OPINION AND ORDER** |

1

Richard J. Holwell, District Judge:

The above-captioned cases each originated in the Southern District of Texas and were transferred to this Court by the Judicial Panel on Multidistrict Litigation (the "Panel") on June 16, 2008. Now before the Court are plaintiffs' motions to suggest to the Panel a remand of the respective actions to their transferor courts. For the reasons that follow, the Court GRANTS plaintiffs' motions and SUGGESTS that these cases be remanded to the Southern District of Texas.

## BACKGROUND

The *Memorial Hermann* action began in Texas state court on November 5, 2007 and was removed to the United States District Court for Southern District of Texas on December 3, 2007 on diversity grounds. The Third Amended Complaint, which this Court granted leave to file on September 17, 2010, *see Memorial Hermann Healthcare System v. State Street Bank & Trust Co.*, No. 08 Civ. 5440 (RJH), 2010 WL 3664490 (S.D.N.Y. Sept. 17, 2010), asserts several causes of action that stem from two Agreements of Trust (the "Trust Agreements") into which plaintiffs Memorial Hermann Healthcare System and The Health Professionals Insurance Company, Ltd. (collectively, "Memorial Hermann") entered with State Street Bank and Trust Company ("State Street"). Based on allegedly misleading statements State Street made when Memorial Hermann was searching for an investment option, Memorial Hermann alleges fraudulent inducement, negligent misrepresentation, and violations of the Texas Securities Act by State Street. (Memorial Hermann Third Am. Compl. ¶¶ 13-39.) Memorial Hermann also asserts that State Street breached its fiduciary duty under the Massachusetts law governing the Trust Agreements "by failing to invest and manage Memorial Hermann's . . . trust property accordance [sic] with the terms of the Trust Agreements, the Investment Objectives set forth in

the Trust Agreements, and representations made by State Street in Fact Sheets and other presentations concerning the investment of property held in trust." (Memorial Hermann Third Am. Compl. ¶ 43.)

Currently outstanding in the *Memorial Hermann* action are Memorial Hermann's motion for partial summary judgment, State Street's motion for summary judgment, two motions about materials in the summary judgment motions, two motions to strike expert reports, and a motion to strike portions of the Fourth Amended Complaint as unauthorized. Memorial Hermann's motion for partial summary judgment calls for a construction of the Trust Agreements under Massachusetts law to find that State Street owed a fiduciary duty to Memorial Hermann. (*See Memorial Hermann*, ECF No. 64.) State Street's motion for summary judgment argues primarily that Memorial Hermann made an informed decision at the end of July 2007 not to redeem out of State Street's Limited Duration Bond Fund (the "LDBF") in which it had invested, and that this failure to mitigate damages on Memorial Hermann's part precludes recovery. (*See Memorial Hermann*, ECF No. 78.) It also argues that Memorial Hermann's complaint fails to state a claim for fraudulent inducement or negligent misrepresentation under Texas law. (*Id.*) State Street's motion to strike the expert report of Lawrence J. Weiner argues that Weiner's opinions would not aid the jury because they do not identify any standards against which to measure State Street's conduct; that the opinions usurp the jury's role by reconstructing the case as an argumentative narrative and opining on the ultimate issue in the case; and that they speculate as to the knowledge and intent of State Street. (*See Memorial Hermann*, ECF No. 69.) Its motion to strike the expert report of J. Philip Ferguson repeats similar arguments with respect to usurping the jury's role, and adds an argument that the report usurps the court's role by testifying as to the legal standards State Street must satisfy. (*See Memorial Hermann*, ECF No. 71.)

The *Houston Police Officers* action began on January 29, 2008, when Houston Police Officers' Pension System ("HPOPS") filed its complaint in the Southern District of Texas. The action arises out of HPOPS's investment in a commodities strategy managed and offered by State Street known as the Enhanced Dow Jones-AIG Commodities Strategy (the "Strategy"). State Street used the discretion granted to it by the parties' Investment Management Agreement (the "IMA") to invest the entire amount that HPOPS had invested into the Strategy in the LDBF.

The complaint lists several causes of action. First, it alleges that State Street and State Street Global Advisors, Inc. ("SSgA") breached their fiduciary duties under Texas law and the IMA. (HPOPS Compl. ¶¶ 71-81.) Second, it alleges that SSgA breached the IMA in several ways. (*Id.* ¶¶ 82-85.) Third, it alleges common-law fraud claims, including fraudulent inducement, fraudulent misrepresentation, and fraud by non-disclosure, and negligent misrepresentation claims against State Street and SSgA. (*Id.* ¶¶ 86-103.) Fourth, it alleges violations of the Texas Securities Act. (*Id.* ¶¶ 104-112.) Finally, the complaint alleges a conspiracy between SSgA and State Street to defraud HPOPS. (*Id.* ¶¶ 113-116.)

Currently pending in *Houston Police Officers* is HPOPS's motion for partial summary judgment, State Street and SSgA's motion for summary judgment, and four motions to strike expert reports. State Street's motion for summary judgment argues primarily that HPOPS failed to mitigate its damages by not redeeming its interest in the LDBF in mid-August 2007. (*See Houston Police Officers*, ECF No. 42.) State Street also contends that the facts of the *Houston Police Officers* case do not support HPOPS's claims of fraud, and that HPOPS's conspiracy count fails as a matter of law because it alleges a conspiracy between State Street and itself. (*See id.*) The arguments in HPOPS's motion for partial summary judgment generally fall into two categories. First, HPOPS argues that the Court should construe the IMA to establish that State

4

Street had full and discretionary power to manage and oversee the entire commodities strategy; it argues that this conclusion is mandated both by the plain language of the IMA and the Texas Government Code.  (*See Houston Police Officers*, ECF No. 52.)  Second, HPOPS argues that it is a Texas governmental entity, created by the Texas Legislature to provide benefits to police officers of the City of Houston and their families; as such, many of the affirmative defenses State Street asserts in its summary judgment motion are inapplicable as a matter of Texas law.  (*Id.*)  The motions to strike expert reports make various arguments, including ones asserting that the relevant expert's opinions fail to reference appropriate industry standards, that the expert is not qualified to render an expert opinion, that the expert usurps the court's role by opining on legal issues, and that the expert usurps the jury's role by reconstructing the facts of the case as an argumentative narrative.  (*See Houston Police Officers*, ECF Nos. 47, 49, 51, 54.)

Both cases were transferred to this Court pursuant to 28 U.S.C. § 1407 on June 16, 2008, by the Panel, which found that "centralization will ensure streamlined resolution of this litigation to the overall benefit of the parties and the judiciary."  (Transfer Order of the Panel on Multidistrict Litigation at 2.)  Since these cases were transferred to this Court, they have undergone coordinated, consolidated fact and expert discovery, which is now complete in both cases.  Other cases that were part of the multidistrict litigation have run their course; the class action suit alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA") has settled, and four other cases have been dismissed.  Six cases now remain in the multidistrict litigation: the two above-captioned cases, three cases primarily involving claims arising under ERISA, and one case involving claims under the Securities Act of 1933.

Both Memorial Hermann and HPOPS have now filed motions to suggest remand to the Panel of their respective cases to their transferor courts in the Southern District of Texas.  They

5

argue that with the close of discovery, the benefit of coordinated proceedings has ended, and it serves the interests of judicial economy to remand these cases now to their trial courts. This opinion addresses the motions to remand in both of the above-captioned cases.

## DISCUSSION

### I. Standard for a Suggestion of Remand

The Panel shall remand an action transferred for multidistrict litigation "at or before the conclusion of such pretrial proceedings to the district from which it was transferred." 28 U.S.C. § 1407(a); *see also Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 28 (1997) (recognizing the "duty" of the Panel to remand transferred actions before trial). In determining whether to issue a suggestion of remand to the Panel, the Court is "guided by the standards for remand employed by the Panel." *In re Bridgestone/Firestone, Inc.*, 128 F. Supp. 2d 1196, 1197 (S.D. Ind. 2001). The ultimate authority for remanding an action lies with the Panel itself. *See* 28 U.S.C. § 1407(a). The Panel shall consider remand on the motion of any party, the suggestion of the transferee district court, or on its own initiative. R.P.J.P.M.L. 7.6(c). However, the Panel is "reluctant to order remand absent a suggestion of remand from the transferee district court." R.P.J.P.M.L. 7.6(d). "In considering the question of remand, the Panel has consistently given great weight to the transferee judge's determination that remand of a particular action at a particular time is appropriate because the transferee judge, after all, supervises the day-to-day pretrial proceedings." *In re Baseball Bat Antitrust Litigation*, 112 F. Supp. 2d 1175, 1177 (J.P.M.L. 2000) (quoting *In re Holiday Magic Securities and Antitrust Litigation*, 433 F. Supp. 1125, 1126 (J.P.M.L. 1977)); *see also In re Brand-Name Prescription Drugs Antitrust Litigation*, 264 F. Supp. 2d 1372, 1376 (J.P.M.L. 2003) ("A transferee judge's suggestion of remand to the Panel is an obvious indication that he has concluded that the game

no longer is worth the candle (and, therefore, that he perceives his role under section 1407 to have ended).").

If "pretrial proceedings have run their course," the Panel is "obligate[d]" to remand any pending cases to their originating courts, an obligation that is "impervious to judicial discretion." *Lexecon*, 528 U.S. at 34-35. When "everything that remains to be done is case-specific," however, it does not necessarily mean that "consolidated proceedings have concluded" and therefore remand is not mandatory; nevertheless, "[c]learly, the Panel has the discretion to remand a case" at this point. *In re Patenaude*, 210 F.3d 135, 145 (3d Cir. 2000); *see also In re Fedex Ground Package System, Inc. Employment Practices Litigation*, Nos. 3:05-MD-527 RM, MDL-1700, 2010 WL 415285, at *2 (N.D. Ind. Jan. 22, 2010) ("The plain language of section 1407 accords the Panel discretion to remand cases before the conclusion of pretrial proceedings, and courts routinely have read the statute in that flexible fashion."). This is because "[i]t is not contemplated that a Section 1407 transferee judge will necessarily complete all pretrial proceedings in all actions transferred and assigned to him by the Panel, but rather that the transferee judge . . . will conduct the common pretrial proceedings . . . and any additional pretrial proceedings as he deems otherwise appropriate." *In re Evergreen Valley Project Litigation*, 435 F. Supp. 923, 924 (J.P.M.L. 1977).

"The Court's discretion to suggest remand 'generally turns on the question of whether the case will benefit from further coordinated proceedings as part of the MDL.'" *In re Merrill Lynch Auction Rate Securities Litigation*, No. 09 MD 2030 (LAP), 2010 WL 2541227, at *2 (S.D.N.Y. June 11, 2010) (quoting *In re Bridgestone/Firestone, Inc.*, 128 F. Supp. 2d at 1197). "The transferee court should consider when remand will best serve the expeditious disposition of the litigation." Manual for Complex Litigation, Fourth § 20.133 at 225. Because the purpose of

multidistrict litigation "is for the convenience of the parties and witnesses and [to] promote the just and efficient conduct of the cases . . . [,] the decision of whether to suggest remand should be guided in large part by whether one option is more likely to insure the maximum efficiency for all parties and the judiciary." *United States ex rel. Hockett v. Columbia/HCA Healthcare*, 498 F. Supp. 2d 25, 38 (D.D.C. 2007).

**II. Application of the Standard for Remand**

Applying these standards to these cases, the Court finds that remand is appropriate at this juncture. Coordinated fact and expert discovery is complete in both *Memorial Hermann* and *Houston Police Officers*, which is among the "primary purpose[s]" of multidistrict litigation. *See In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL No. 1014, 1997 WL 109595, at *2 (E.D. Pa. Mar. 7, 1997) ("While the court recognizes that 28 U.S.C. § 1407 contemplates an MDL transferee court ruling on summary judgment motions, the primary purpose behind the establishment of a multidistrict litigation transferee court was and is to promote efficiency through the coordination of discovery."). Furthermore, both cases involve the application of Texas law, a task for which a court in Texas is better situated. *See, e.g.*, *In re Insurance Brokerage Antitrust Litigation*, MDL No. 1663, 2009 WL 1874085, at *4 (D.N.J. June 30, 2009) ("[A]djudication of dispositive motions will also require the application of Missouri state statutory and common law. The Court believes that such a detailed review may best be undertaken by the court that sits in that state and more frequently applies the law that controls Plaintiffs' cases. . . . This factor also weighs heavily in favor of remand."). Deciding State Street's motion for summary judgment on Memorial Hermann's state-law fraud claims, for

example, involves the application of Texas law,[1] and all of the issues in the summary judgment motions in *Houston Police Officers* involve the application of Texas law.

More importantly, the summary judgment motions in these cases are case-specific, and "like other MDL judges," the Court finds that "case-specific rulings 'are neither the purpose, nor the forte, of a court presiding over a multi-district litigation. . . . [T]he transferee court typically does not rule on cumbersome, case-specific legal issues.'" *In re Nuvaring Products Liability Litigation*, No. 4:08MD1964 RWS, 2009 WL 4825170, at *2 (E.D. Mo. Dec. 11, 2009) (quoting *In re Phenylpropanolamine Products Liability Litigation*, No. MDL 1407, 2004 WL 2034587, at *2 (W.D. Wash. Sept. 3, 2004)). An examination of the outstanding summary judgment motions reveals the distinct, case-specific nature of each motion. State Street's two summary judgment motions have some overlap in that they both argue that the plaintiff's decision not to redeem out of the LDBF earlier reflects a failure to mitigate damages and that the plaintiff's fraud claims are insufficient as a matter of law. Beyond that, however, the outstanding summary judgment motions are dissimilar enough that deciding them in this Court does not gain anything in terms of judicial economy. Even the issue of whether HPOPS or Memorial Hermann failed to mitigate their damages is bound up in the specific facts of each case. With respect to HPOPS, for example, State Street argues that HPOPS was fully informed of the LDBF's subprime mortgage exposure, leverage, and negative performance by mid-August 2007 via communications with HPOPS's Chief Investment Officer, but that HPOPS elected not to redeem HPOPS out of the LDBF until November 2007, reflecting a failure to mitigate damages. (State Street's HPOPS Summary Judgment Mem. at 12-17.) If HPOPS had a duty to mitigate damages, deciding this issue would depend on, among other things, the specific communications between State Street

---

[1] State Street maintains that Massachusetts law applies to all of Memorial Hermann's claims, but in so arguing, still invokes Texas choice-of-law principles. (State Street's Memorial Hermann Summary Judgment Mem. at 1 n.2)

and Patrick Franey, HPOPS's Chief Investment Officer, and the extent to which these communications triggered that duty. With respect to Memorial Hermann, however, State Street argues that Memorial Hermann was fully informed by July 27, 2007. Unlike in *Houston Police Officers*, State Street's argument in *Memorial Hermann* is based on communications it had with Memorial Hermann's outside independent investment advisor as opposed to communications it had directly with Memorial Hermann. State Street further argues that Memorial Hermann ignored the advice of its investment advisor in failing to redeem out of the LDBF. (*See* State Street's Memorial Hermann Summary Judgment Mem. at 12-17.) State Street's arguments against the fraud claims also depend on the particular facts of each case. The HPOPS fraud claim is based on an August 2005 presentation regarding the LDBF and the Strategy, while Memorial Hermann's claim focuses on a statement in the LDBF Fact Sheet. (*Compare* State Street's HPOPS Mem. at 20-24 *with* State Street's Memorial Hermann Summary Judgment Mem. at 19-25.) Deciding the summary judgment motions on these claims will require an evaluation of the specific statements State Street made to HPOPS and Memorial Hermann and of each plaintiff's specific acts and the disclosures State Street made to each plaintiff (directly or indirectly) at the time when State Street alleges they should have been mitigating their damages.

      HPOPS and Memorial Hermann's motions for partial summary judgment are even more distinct. Memorial Hermann seeks an adjudication of the existence and scope of State Street's fiduciary duties based on a construction of the Trust Agreements under Massachusetts law. (*See* Memorial Hermann's Partial Summary Judgment Mem. at 2-7.) HPOPS, on the other hand, argues in its partial summary judgment motion that, among other things: (1) State Street had full and discretionary power to oversee HPOPS's commodities strategy based on a construction of the IMA under Texas law between HPOPS and State Street; and (2) many of State Street's

affirmative defenses are invalid as a matter of law because of HPOPS's status as a governmental entity and Texas Government Code Section 802.203(c). These motions have little overlap with each other, and ruling on them would also be case-specific.

Therefore, it would not be in the interests of judicial economy for this Court to rule on the pending motions for summary judgment when these cases must ultimately be remanded to the transferor courts for trial. "The MDL procedure is . . . designed to maximize efficiency and fairness by minimizing both the sheer number of rulings required, and any discrepancies between and among them." *In re Phenylpropanolamine*, 2004 WL 2034587, at *2. The Court would have to rule separately on each of the summary judgment motions, and no party argues otherwise. No gain in judicial economy is to be had by this Court deciding the summary judgment motions instead of remanding them to the transferor courts to which they must ultimately be remanded.

State Street opposes the motions to remand on three grounds. First, State Street argues that this Court's familiarity with the issues presented makes it uniquely suited to decide the pending motions in *Memorial Hermann* and *Houston Police Officers*. Second, State Street contends that the Court should retain these cases because the unresolved pretrial issues continue to relate to the same set of core questions. Third, State Street argues that the Court should continue to preside over pretrial proceedings at this stage to prevent inconsistent outcomes. These arguments are addressed in turn.

The Court finds State Street's first argument unpersuasive. The cases State Street cites stand for the unremarkable proposition that where a judge has accumulated experience dealing with the substantive issues in a particular case, it may be more efficient for that judge to continue to apply his expertise to that case. *See, e.g.*, *United States ex rel. Hockett*, 498 F. Supp. 2d at 38

("This Court's familiarity with the issues in this case . . . indicates that it would be much more efficient to proceed to summary judgment motions in this Court rather than to ask the transferor court to play catch-up."). But the issues in the other MDL cases with which the Court has dealt have largely surrounded ERISA or the Securities Act, neither of which is at issue in *Memorial Hermann* or *Houston Police Officers*. In *In re State Street Bank and Trust Co. ERISA Litigation*, 579 F. Supp. 2d 512 (S.D.N.Y. 2008), for example, the Court decided the question of whether certain defined-benefit and defined-contribution employee benefit plans had standing under ERISA and whether the plaintiff in that case stated claims for equitable relief. In *In re State Street Bank and Trust Co. ERISA Litigation*, MDL No. 1945, 2009 WL 3458705 (S.D.N.Y. Oct. 28, 2009), the Court supervised the settlement of a consolidated group of class action suits under ERISA. The Court's opinions in *Yu v. State Street Corp.*, 686 F. Supp. 2d 369 (S.D.N.Y. 2010) and *Yu v. State Street Corp.*, No. 08 Civ. 08235 (RJH), 2010 WL 2816259 (S.D.N.Y. July 14, 2010), dealt with the sufficiency of a complaint under the Securities Act of 1933. In *F.W. Webb Co. v. State Street Bank and Trust Co.*, No. 09 Civ. 1241 (RJH), 2010 WL 3219284 (S.D.N.Y. Aug. 12, 2010), the Court addressed primarily whether the defendants owed the plaintiffs any fiduciary duties under ERISA. The Court also addressed the preemption of certain state-law claims by ERISA and dismissed plaintiffs' Massachusetts Uniform Securities Act claims based on inadequate pleadings. 2010 WL 2816259, at *15-16. In *Apogee Enterprises, Inc. v. State Street Bank and Trust Co.*, No. 09 Civ. 1899 (RJH), the Court also addressed whether the defendants were fiduciaries under ERISA and considered the sufficiency of pleadings with respect to common-law and state statutory causes of action. None of the Court's decisions so far in this multi-district litigation, then, have dealt with the issues presented in *Memorial Hermann* and *Houston Police Officers*.

Furthermore, to the extent State Street argues that the Court's general expertise accumulated in dealing with the cases in this multidistrict litigation compels a conclusion that remand is unwarranted, the cases it cites are distinguishable. In *In re Patenaude*, for example, the court found that the "judge's time and energy spent becoming familiar with the recurring issues of asbestos litigation" would make "[c]entralized management of individual *settlement negotiations*" more efficient in that case. 210 F.3d at 145 (emphasis added). In *In re Integrated Resources, Inc.*, MDL No. 897, 1995 WL 234975 (S.D.N.Y. Apr. 21, 1995), the plaintiff's sole ground in seeking remand was "the formalistic argument that there can be no 'common' issues if there are no longer any cases with which to have issues in common," 1995 WL 234975, at *4, and therefore the court refused to suggest remand. This is not the case here. Rather, this case is more analogous to *Integrated Resource*'s suggestion that "[w]hen motions pending at the time remand is requested are unique to the particular action . . . , and resolution of those motions does not require any of the expertise or familiarity that was gained by the transferee court in handling the case up to the time of the remand motion, remand will be granted." 1995 WL 234975, at *4. Aside from granting Memorial Hermann leave to amend its complaint, the Court has not accumulated any particular expertise to this point with respect to the substantive issues or facts in these cases that would be helpful to the resolution of the pending motions. Although the cases have undergone coordinated discovery, "the discovery issues resolved by this Court have not been administratively complex or novel. As such, this Court is no better position [sic] than the transferor court to decide the pending matters." *In re Cobra Tax Shelters Litigation*, MDL No. 1727, 2009 WL 1010422, at *1 (S.D. Ind. Apr. 14, 2009).

State Street's second argument is also unavailing. The argument has several components. First, State Street offers a list comparing the HPOPS and Memorial Hermann complaints and

argues that the "plentitude of core factual issues that are still common among the remaining cases in the MDL" compel a conclusion that remand is inappropriate. (Def.'s Opp'n at 6-8.) The question at this stage of the litigation, however, is not how much factual similarity the complaints have, but whether further coordinated proceedings would serve judicial economy. It is obvious that the complaints have some factual similarity. If they did not, they would not have been transferred to this Court by the Panel at all. Adjudication of the summary judgment motions in these cases, however, depends on the facts and applicable law particular to each case and requires case-specific rulings. In this respect, ruling on the summary judgment motions "involves a determination that is highly individualistic, and depends on the characteristics of individual plaintiffs" and are generally not considered by MDL courts. *In re Meridia Products Liability Litigation*, 328 F. Supp. 2d 791, 799 (N.D. Ohio 2004) (internal quotation marks omitted). State Street's argument fails to show that further coordinated proceedings with respect to the summary judgment motions promote judicial economy.

Second, State Street attacks the arguments made by Memorial Hermann and HPOPS that a court in Texas is better suited to apply Texas law. (Def.'s Opp'n at 8-9.) In support of this contention, State Street cites two cases that find that centralization is appropriate notwithstanding the need for a federal judge to apply the law of more than one state. *See In re Data General Corp. Antitrust Litigation*, 510 F. Supp. 1220, 1227-28 (J.P.M.L. 1979) ("It is in the very nature of coordinated or consolidated pretrial proceedings in multidistrict litigation for the transferee judge to be called upon to apply the law of more than one state."); *In re Armored Car Antitrust Litigation*, 462 F. Supp. 394, 396 (J.P.M.L. 1978) ("Maryland's argument that transfer of Maryland should be denied because a Maryland court might be better able to apply Maryland law is similarly unpersuasive."). If the procedural posture of this case were one in which

14

centralization was at issue, this argument might carry some weight. Where case-specific rulings are all that remain, however, multiple courts have found that the need to apply the law of the state of the transferor court is a factor weighing in favor of remand. *See, e.g.*, *In re Insurance Brokerage Antitrust Litigation*, 2009 WL 1874085, at *4; *In re Orthopedic Bone Screw Products Liab. Litig.*, 1997 WL 109595, at *2 ("[T]he transferor court would be better equipped to render a decision in accordance with its forum state's 'choice of law' law and, if applicable, its forum state's substantive law . . . .").

Third, State Street argues that "[t]ransferee courts routinely entertain motions for summary judgment prior to remand, and in cases far more procedurally complex than these." (Def.'s Opp'n at 9.) But this states nothing but a truism; multi-district cases have been remanded at many different stages of litigation, including before and after summary judgment motions. *See* Manual for Complex Litigation § 20.133, at 225 ("In some cases, remands have been ordered relatively early, while substantial discovery remained to be done; in others, virtually all discovery had been completed and the cases were ready for trial at the time of remand to the transferor districts."). The question here is not whether the Court can entertain summary judgment motions, but whether the Court should exercise its discretion to do so. State Street's argument is unhelpful on that point.

Fourth, State Street contends that "[e]ven if each case's unique factual issues dominated over the common questions . . . , this Court remains in a better position to consider and rule on dispositive motions and the admissibility of certain expert testimony." (Def.'s Opp'n at 11-12.) In support of this contention, State Street cites several cases that suggest that consolidated proceedings do not conclude when only case-specific proceedings remain. (*See* Def.'s Opp'n at 12.); *see, e.g.*, *In re Wilson*, 451 F.3d 161, 172-73 (3d Cir. 2006); *United States ex rel. Hockett*,

498 F. Supp. 2d at 37. Again, this argument conflates "can" with "should." The cases State Street cites stand only for the proposition that this Court may continue to preside over multi-district litigation even when case-specific proceedings remain; they do nothing to advance the argument that this Court should, in its discretion, continue to preside over *Memorial Hermann* and *Houston Police Officers*. None of these components of State Street's second argument, therefore, compel a conclusion that the Court should not remand these cases.

State Street's last argument principally concerns two experts, Lawrence P. Weiner and J. Philip Ferguson, who submitted expert reports in both cases. Because these reports "are nearly identical in most substantive respects," State Street contends that it would both promote judicial efficiency and prevent inconsistent outcomes for this Court to rule on these reports before remand of these cases. (Def.'s Opp'n at 13.) As a practical matter, however, ruling on these motions at this time is unwarranted. Depending on the outcome of the summary judgment motions, large sections of the expert reports may be mooted. If, for example, the transferor court accepts State Street's argument that either HPOPS or Memorial Hermann failed to mitigate their damages such that they cannot recover for a breach of State Street's fiduciary duties, Weiner and Ferguson's opinions on whether State Street breached its duties are no longer relevant to this case. The Court finds that the determinations about the exclusion of expert testimony, to the extent the need for them remains after the summary judgment motions, are best made after *in limine* motions are filed before the court that will actually oversee the trial of these cases in the Southern District of Texas. *See In re Orthopedic Bone Screw Products Liab. Litig.*, 1997 WL 109595, at *9 ("[T]he 'finer' determinations concerning which of Dr. Alexander's opinions are subject to inclusion or exclusion are more appropriately made by the ultimate trial court after remand or transfer." (internal quotation mark omitted)); *see also In re Cessna 208 Series Aircraft*

16

*Prods. Liab. Litig.*, MDL No. 1721, 2009 WL 1357234, at *2 (D. Kan. May 12, 2009) ("[I]n many cases, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in the proper context.")

## CONCLUSION

For the foregoing reasons, plaintiffs' motions for suggestion of remand [**08cv5440: 59, 08cv5442: 35**] are GRANTED. The Court SUGGESTS to the Panel remand of these cases to the Southern District of Texas. Accordingly, the Clerk of the Court is requested to administratively close the open motions in these actions [**08cv5440: 63, 68, 70, 75, 101, 104, 117; 08cv5442: 40, 41, 46, 48, 50, 53**] without prejudice to restoration of these motions to this Court's calendar should the Panel not accept the Court's suggestion of remand.

SO ORDERED.

Dated: New York, New York
March 22, 2011

Richard J. Holwell
United States District Judge